**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **MARK M.,** | * |
| **Plaintiff,** | * |
| **v.** | *     **Civil Action No. EA-24-3738** |
| **FRANK J. BISIGNANO,** | * |
| **Social Security Commissioner,** | |
| | * |
| **Defendant.** | |
| | * |

**MEMORANDUM OPINION**

On December 26, 2024, Plaintiff Mark M. petitioned this Court to review the final decision of the Social Security Administration (SSA or Commissioner) denying his claim for benefits.  ECF No. 1.  This case was referred to a United States Magistrate Judge with the parties' consent.[1]  ECF Nos. 3–5; 28 U.S.C. § 636; Local Rule 301.4 (D. Md. Dec. 1, 2025).  Pending before the Court is Plaintiff's appeal, which is fully briefed.  ECF Nos. 12, 23–24.  No hearing is necessary.  Local Rule 105.6.  This Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards.  42 U.S.C. §§ 405(g), 1383(c)(3); *Craig* v. *Chater*, 76 F.3d 585, 589 (4th Cir. 1996).  Under that standard, and for the reasons set forth below, the Commissioner's decision is reversed, and the case is remanded for further proceedings consistent with this Memorandum Opinion.

## I.    BACKGROUND

### A.    Procedural History

On December 21, 2021, Plaintiff filed an application for Supplemental Security Income under Title XVI of the Social Security Act (the Act), 42 U.S.C. § 1381 *et seq.*, alleging a

---

[1] This case was reassigned to the undersigned on February 23, 2026.

disability onset date of August 1, 2021.[2]  ECF Nos. 8-4 at 23–24; 8-6 at 2.[3]  Plaintiff claimed that

he was disabled within the meaning of the Act because he is unable to work due to

"schizophrenia, bipolar, anxiety, panic attacks, kidney problems, [and traumatic brain injury]

from [a] fall."  ECF No. 8-4 at 24.  The SSA denied Plaintiff's application for benefits on

October 7, 2022.  ECF No. 8-5 at 8.  Plaintiff filed for reconsideration, and the SSA affirmed its

initial determination on October 30, 2023.  ECF No. 8-5 at 12, 16.  Plaintiff requested a hearing

before an Administrative Law Judge (ALJ), which was held on June 6, 2024.  ECF Nos. 8-3

at 42; 8-5 at 19.  The ALJ rendered a decision on June 17, 2024, in which she found that Plaintiff

was not disabled within the meaning of the Act.  ECF No. 8-3 at 23–37.  Plaintiff requested

review of the ALJ's decision, which the Appeals Council denied on August 14, 2024.  ECF No.

8-3 at 13.  The ALJ's June 17, 2024 decision therefore constitutes the final, reviewable decision

of the SSA.  *Sims* v. *Apfel*, 530 U.S. 103, 106-107 (2000); 42 U.S.C. § 405(g); 20 C.F.R.

§ 422.210(a).[4]

### B.    Statutory Framework

The Social Security Act authorizes Supplemental Security Income payments to "persons

who have a 'disability.'"  *Barnhart* v. *Thomas*, 540 U.S. 20, 21 (2003).  The Act defines

disability as being "unable to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be expected to result in death

---

[2]  "Title XVI provides supplemental security income benefits to financially needy individuals who are aged, blind, or disabled regardless of their insured status."  *Smith* v. *Berryhill*, 587 U.S. 471, 475 (2019) (internal quotation marks and citation omitted).

[3]  Page numbers refer to the pagination of the Court's Case Management/Electronic Case Files system (CM/ECF) system printed at the top of the cited document.

[4]  After a hearing to determine an individual's eligibility for Supplemental Security Income benefits, the Commissioner's final determination is subject to the same judicial review as provided in 42 U.S.C. § 405(g).  42 U.S.C. § 1383(c)(3).

or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A); *see also* 20 C.F.R. § 416.905(a).  Federal regulations require an ALJ to evaluate a claimant's disability claim using a five-step sequential evaluation process.  20 C.F.R. § 416.920.  Through this process, an ALJ evaluates, in order, "whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." *Hancock* v. *Astrue*, 667 F.3d 470, 472 (4th Cir. 2012).  "The applicant bears the burden of production and proof during the first four steps."  *Pass* v. *Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).  At the fifth step, "the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that exists in significant numbers in the national economy, considering the claimant's residual functional capacity, age, education, and work experience."  *Mascio* v. *Colvin*, 780 F.3d 632, 635 (4th Cir. 2015) (internal quotation marks and citation omitted).

If the claimant satisfies step three, there is "an automatic finding of disability," which "relieves the decision maker from proceeding to steps 4 and 5."  *Patterson* v. *Commissioner of Soc. Sec. Admin.*, 846 F.3d 656, 659 (4th Cir. 2017).  If the claimant does not carry their burden at the third step of the sequential evaluation, then the ALJ must assess relevant evidence and make a finding regarding the claimant's residual functional capacity.  20 C.F.R. § 416.920(e); *Monroe* v. *Colvin*, 826 F.3d 176, 179 (4th Cir. 2016).  Residual functional capacity is defined as "the most [the claimant] can still do despite your [physical and mental] limitations."  20 C.F.R. § 416.945.  The residual functional capacity assessment "must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis."  *Mascio*, 780 F.3d at 636 (quoting Social Security Ruling 96-8p, Titles II and

3

XVI: Assessing Residual Functional Capacity in Initial Claims (SSR 96-8p), 61 Fed. Reg. 34,474, 34,475 (July 2, 1996)). "Only after such a function-by-function analysis may an ALJ express [residual functional capacity] 'in terms of the exertional levels of work.'" *Monroe*, 826 F.3d at 187 (quoting *Mascio*, 780 F.3d at 636). The ALJ then uses the residual functional capacity determination at the fourth and fifth steps of the disability assessment. 20 C.F.R. § 416.920(e); *Monroe*, 826 F.3d at 179-180.

### C.    The ALJ's Decision

At step one of the five-step sequential disability evaluation, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the application date. ECF No. 8-3 at 28. At step two, the ALJ found that Plaintiff suffered from the severe impairments of "orthostatic [hypotension], hypertension, degenerative disc disease of the cervical spine, degenerative disc disease of the lumbar spine, schizoaffective disorder, bipolar type, attention-deficit hyperactivity disorder (ADHD), bipolar disorder, major depressive disorder, generalized anxiety disorder, panic disorder, obsessive compulsive disorder (OCD), social phobia, and insomnia." *Id*. (bold removed and citation omitted).[5] The ALJ also determined that Plaintiff suffered from the non-severe impairments of "GERD, opioid dependence, cocaine dependence, psychoactive substance abuse, closed head injury, acute kidney injury, cellulitis of finger of the left hand, chest pain, Hepatitis C positive, history of calculus of kidney, low blood pressure, anemia, and history of cholecystectomy."[6] *Id*. at 28–29 (internal citations omitted). At step three, the ALJ determined

---

[5] The ALJ refers to Plaintiff's severe impairment as "orthostatic hypertension" and "hypertension" in the step two finding but later refers to it as "orthostatic hypotension" and "hypertension." *Compare* ECF No. 8-3 at 28 *with* ECF No. 8-3 at 33. The medical records reflect diagnoses of both "orthostatic hypotension" and "hypertension." *See, e.g.,* ECF No. 8-9 at 6, 7, 13.

[6] "GERD" is an abbreviation for gastroesophageal reflux disease. "GERD." Merriam-Webster.com Dictionary, Merriam-Webster, https://perma.cc/3Z4R-M42G (last accessed March 16, 2026).

that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."[7] *Id*. at 29 (bold removed and citations omitted).  In reaching this conclusion, the ALJ evaluated the "paragraph B" criteria and whether Plaintiff's mental impairments resulted in "one extreme limitation or two marked limitations in a broad area of functioning." *Id.* at 30. The ALJ found that Plaintiff has a moderate limitation in the area of concentrating, persisting or maintaining pace (in addition to the three other functional areas), outlined the evidence that supported her finding, and concluded that the "paragraph B" criteria were not satisfied.[8]

Before continuing to the fourth step, the ALJ determined that Plaintiff retained the residual functional capacity to:

> perform medium work as defined in 20 CFR 416.967(c)[,] however, his ability to work at that level is reduced in [that] he is limited to occupations that require no more than frequent postural maneuvers, such as balancing stooping, kneeling, crouching, crawling, and climbing on ramps and stairs, but must avoid occupations that require climbing on ladders, ropes, and scaffolds.
>
> The claimant is limited to occupations which do not require exposure to hazards such as dangerous machinery and unprotected heights.
>
> The claimant is able to perform jobs that involve detailed but not complex instructions to perform simple, routine tasks.

---

[7] Appendix 1 to 20 C.F.R. Part 404, Subpart P provides a listing of impairments.  Within Appendix 1, "Adult Listings 12.00 *et seq.* . . . pertain to mental impairments, and consist of (1) 'paragraph A criteria,' which consist of a set of medical findings; (2) 'paragraph B criteria,' which consist of a set of impairment-related functional limitations; and (3) 'paragraph C criteria,' which relate to 'serious and persistent' disorders lasting at least two years with a history of ongoing medical treatment and marginal adjustment." *Autumn T.* v. *Saul*, Civil Action No. DLB-19-1572, 2020 WL 4194145, at *3 (D. Md. July 21, 2020).  A listing of impairments found in 20 C.F.R. Part 404, Subpart P, Appendix 1 is incorporated into the evaluation criteria for Supplemental Security Income Benefits.  20 C.F.R. § 416.925.

[8] A "moderate" limitation, which falls in the middle of a five-point rating scale, means that a claimant's "functioning in this area independently, appropriately, effectively, and on a sustained basis is fair." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(F)(2)(c).

5

> The claimant is limited to occupations that require the claimant to deal with occasional changes in a routine work setting. The claimant is limited to occupations which require no interaction with members of the general public, and no more than occasional interaction with supervisors and coworkers. The claimant cannot perform work requiring a specific production rate, such as assembly line work or work that requires hourly quotas.

*Id*. at 31 (bold removed; line breaks added). The ALJ concluded that "greater limitations are not warranted by the claimant's improvement and stability with treatment, the normal physical, mental status, and diagnostic exam findings, and his continued activities of daily living." *Id*. at 35.

At the fourth step, the ALJ determined that Plaintiff was unable to perform past relevant work as a glass installer, which is "semi-skilled" and "performed generally at the medium exertional level and performed actually at the heavy exertional level." *Id*. at 35. Lastly, at the fifth step, the ALJ determined that because there are jobs that exist in the national economy that Plaintiff can perform, Plaintiff is not "under a disability" as defined in the Act, and the SSA properly denied his application for benefits. *Id*. at 36–37.

## II.    DISCUSSION

On appeal, Plaintiff argues that the ALJ's decision is not supported by substantial evidence because the ALJ failed to adequately explain how the accommodations in the residual functional capacity finding are sufficient to accommodate Plaintiff's mental and physical impairments and erroneously evaluated Plaintiff's subjective statements.[9] ECF No. 12 at 8–32. The Commissioner argues the opposite. ECF No. 23 at 7–18. The applicable standard of review and each of Plaintiff's arguments are addressed in turn below.

---

[9] Plaintiff also argues that the Administrative Law Judge failed to define a key term used in her residual functional capacity finding and the vocational expert's testimony. *See* footnote 12, *infra*.

A.    **Standard of Review**

The scope of judicial review of the SSA's disability determination is "circumscribed." *Britt* v. *Saul*, 860 Fed. Appx. 256, 259 (4th Cir. 2021) (citing 42 U.S.C. § 405(g)). The Court must affirm the decision "so long as the agency applied correct legal standards and the factual findings are supported by substantial evidence." *Id.*; *accord Mascio*, 780 F.3d at 634; *Coffman* v. *Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Factual findings supported by substantial evidence "shall be conclusive." 42 U.S.C. § 405(g); *see also Hays* v. *Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) ("[I]t is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Secretary if [the] decision is supported by substantial evidence.").

"The phrase 'substantial evidence' is a 'term of art' used throughout administrative law to describe how courts are to review agency factfinding." *Biestek* v. *Berryhill*, 587 U.S. 97, 102 (2019). Under this standard of review, substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* at 103 (quoting *Consolidated Edison Co.* v. *NLRB*, 305 U.S. 197, 229 (1938)); *see also Laws* v. *Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) ("Substantial evidence . . . is evidence which a reasoning mind would accept as sufficient to support a particular conclusion."). It is "more than a mere scintilla . . . [and] somewhat less than a preponderance." *Laws*, 368 F.2d at 642. The "threshold for such evidentiary sufficiency is not high." *Biestek*, 587 U.S. at 103.

In conducting the substantial evidence inquiry, this Court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co.* v. *Akers*, 131 F.3d 438, 439-440 (4th Cir. 1997). Although an ALJ's decision must be sufficiently detailed to allow for meaningful judicial review, an "elaborate or even sophisticated" explanation is not required. *Mascio*, 780 F.3d

at 636-637; *T-Mobile S., LLC* v. *City of Roswell*, 574 U.S. 293, 302 (2015).  Rather, an

administrative decision's reasoning need only be "reasonably discernible."  *Garland* v. *Ming*

*Dai*, 593 U.S. 357, 369 (2021).  "Meaningful review is frustrated—and remand necessary—only

where [the court is] unable to fathom the [ALJ's] rationale in relation to evidence in the record."

*Britt*, 860 Fed. Appx. at 262 (internal quotation marks and citation omitted).

> **B.**      **Residual Functional Capacity**

A claimant's residual functional capacity is determined using a two-step process.  The

ALJ must first "identify the individual's functional limitations . . . and assess [their] work-related

abilities on a function-by-function basis."  SSR 96-8p, at 61 Fed. Reg. 34,475.  "The function-

by-function approach asks the ALJ to consider a claimant's specific 'exertional and

nonexertional functions.'"[10]  *Ladda* v. *Berryhill*, 749 Fed. Appx. 166, 173 (4th Cir. 2018)

(quoting SSR 96-8p, at 61 Fed. Reg. 34,476).  The ALJ then expresses a claimant's residual

functional capacity "in terms of the exertional levels of work," such as "sedentary, light,

medium, heavy, and very heavy."  SSR 96-8p, 61 Fed. Reg. at 34,475; *see also* 20 C.F.R.

§ 416.967 (defining the physical exertion requirements of each exertional level of work).  "When

a claimant has several impairments, including non-severe impairments, the administrative law

judge must consider their cumulative effect in making a disability determination."  *Britt*, 860

Fed. Appx. at 261 (citing 20 C.F.R. § 416.945(a)(2)); *accord Brown* v. *Commissioner, Soc. Sec.*

*Admin.*, 873 F.3d 251, 255 (4th Cir. 2017); *Mascio*, 780 F.3d at 635.

---

[10]  "Exertional capacity . . . defines the individual's remaining abilities to perform each of
seven strength demands: Sitting, standing, walking, lifting, carrying, pushing, and pulling."
Social Security Ruling 96-8p, Titles II and XVI: Assessing Residual Functional Capacity in
Initial Claims, 61 Fed. Reg. 34,474-01, 34,477 (July 2, 1996).  "Nonexertional capacity
considers all work-related limitations and restrictions that do not depend on an individual's
physical strength," such as stooping, climbing, reaching, seeing, hearing, speaking,
understanding and remembering instructions, and tolerance of temperature extremes.  *Id.*

When formulating a residual functional capacity assessment, an ALJ "must consider all the claimant's 'physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect [the claimant's] ability to work.'" *Thomas* v. *Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (quoting *Monroe*, 826 F.3d at 188) (alteration in original); *see also* SSR 96-8p, 1996 WL 374184, at *5 (holding that an ALJ must consider the "limitations and restrictions imposed by all of an individual's impairments, even those that are not severe," when assessing a claimant's residual functional capacity). While the SSA guidelines require a "function-by-function" analysis to determine a claimant's residual functional capacity, the United States Court of Appeals for the Fourth Circuit has held that this analysis does not need to be explicit. *Mascio*, 780 F.3d at 636 (rejecting "a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis"). Instead, the key consideration is whether the ALJ identified the evidence relied upon in determining the claimant's residual functional capacity and built "an accurate and logical bridge from the evidence to that conclusion." *Monroe*, 826 F.3d at 189 (internal quotation marks and citation omitted). A proper residual functional capacity analysis "has three components: (1) evidence, (2) logical explanation, and (3) conclusion." *Thomas*, 916 F.3d at 311. The second component of this analysis, "the ALJ's logical explanation, is just as important as the other two." *Id.*; *see also* SSR 96-8p, 61 Fed. Reg. at 34,478 ("The [residual functional capacity] assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence.").

Remand may be appropriate where the ALJ's residual functional capacity analysis "contains too little logical explanation for . . . meaningful appellate review." *Thomas*, 916 F.3d at 312. Remand may also be appropriate where an ALJ finds an impairment to be non-severe at steps two and three but then fails to consider its potential functional effects when assessing the

claimant's residual functional capacity.  *E.g.*, *Janet L.* v. *Saul*, Civil Action No. CBD-19-2544, 2021 WL 1733469, at *7 (D. Md. Apr. 30, 2021).

    1.  Mental Impairments

  "When evaluating the severity of a claimant's mental impairments, the ALJ must employ the 'special technique' to rate [the claimant's] degree of limitation in the four broad functional areas known as the paragraph B criteria." *Autumn T.* v. *Saul*, Civil Action No. DLB-19-1572, 2020 WL 4194145, at *3 (D. Md. July 21, 2020) (citing 20 C.F.R. §§ 416.920a(c), 416.925). The four "paragraph B" functional areas are: (1) "understanding, remembering, or applying information"; (2) "interacting with others"; (3) "concentrating, persisting, or maintaining pace"; and (4) "adapting, or managing oneself." *Anthony M.* v. *Commissioner*, Civil Action No. SAG-19-651, 2020 WL 434581, at *2 (D. Md. Jan. 28, 2020) (citing 20 C.F.R. § 404.1520a).  An ALJ must follow the special-technique regulation, 20 C.F.R. § 416.920a, "[w]hen evaluating and documenting the severity of a claimant's mental impairment at steps 2 and 3—and its concomitant impact on the [residual functional capacity] assessment relevant to step 4." *Patterson*, 846 F.3d at 659.  The severity determination is distinct from the assessment of residual functional capacity, which occurs after step three.  *See, e.g.*, *Anthony M.*, 2020 WL 434581, at *3 (explaining that "the limitations identified in the 'paragraph B' criteria are not [a residual functional capacity] assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process") (internal quotations and citations omitted).

  Here, Plaintiff argues that the ALJ failed to explain how the limitations listed in the residual functional capacity finding would be sufficient to accommodate Plaintiff's mental impairments.  ECF No. 12 at 10.  Plaintiff further contends that the ALJ failed to explain "how or why she decided that Plaintiff can sustain gainful employment so long as the work does not entail 'a specific production rate, such as assembly line work or work that requires hourly

quotas.'" *Id*. at 11 (quoting ECF No. 8-3 at 72–73). The Commissioner counters that the "duty of explanation is satisfied" because the "ALJ indicated how the residual functional capacity accounted for Plaintiff's proven limitations" and that "the specific phrase Plaintiff objects to was properly contextualized within a [residual functional capacity]" that included multiple limitations. ECF No. 23 at 13–14. The undersigned concurs that the ALJ's residual functional capacity determination did not adequately address Plaintiff's moderate concentration, persistence, or pace limitations.

As noted, *see* I.C., *supra*, the ALJ evaluated the severity of Plaintiff's mental impairments by assessing his limitations in the "paragraph B" functional areas. ECF No. 8-3 at 30–31. The ALJ found that Plaintiff had moderate limitations in all four functional areas. *Id.* The ALJ expressly recognized, however, that her "paragraph B" findings "are not a residual functional capacity assessment" and that the residual functional capacity determination at steps four and five required "a more detailed assessment of areas of mental functioning." *Id*. at 31. The residual functional capacity assessment requires the ALJ to evaluate whether Plaintiff's mental impairments call for any work-related functional limitations, and, if not, to explain why none are warranted. *Eiker* v. *Astrue*, Civil Action No. CBD-11-3584, 2013 WL 2149755, at *8 (D. Md. May 15, 2013).

The ALJ's decision includes review of Plaintiff's testimony, as well as the medical and other evidence in the record with regard to both his physical and mental impairments. ECF No. 8-3 at 31–35. Following this review, the ALJ concluded that while Plaintiff has severe physical and mental impairments, the evidence did not support the conclusion that Plaintiff was debilitated from these conditions. *Id.* at 35–37. The ALJ's discussion of the medical and other evidence, including Plaintiff's capacity and daily activities, does not, however, create a "logical bridge" to her conclusion regarding the concentration, persistence, and pace limitations

11

contained within her residual functional capacity determination. *Monroe*, 826 F.3d at 189.  The residual functional capacity finding addressed Plaintiff's mental function limitations areas by noting that Plaintiff could perform jobs that "involve detailed but not complex instructions to perform simple, routine tasks," "require the claimant to deal with occasional changes in a routine work setting," involve "no interaction with members of the general public and no more than occasional interaction with supervisors and coworkers," and do not require "a specific production rate, such as assembly line work or work that requires hourly quotas."  ECF No. 8-3 at 31 (bold removed).

These limitations adequately address three out of four of the "paragraph B" areas.  The ALJ's limitation regarding work that does not require "a specific production rate such as assembly line work or work that requires hourly quotas," does not adequately address Plaintiff's moderate limitation in concentration, persistence, and pace.  *Catherine B.* v. *Kijakazi*, Civil Action No. CDA-22-3089, 2023 WL 8361643 (D. Md. Dec. 1, 2023) ("To be sure, this evidence *may* support conclusions that Plaintiff's [concentration, persistence, and pace] limitations can be effectively accommodated by restrictions from production-pace and assembly-line work.  But SSR 96-8P does not merely require an ALJ to provide a discussion containing evidence that supports the ALJ's conclusions.  Rather, it requires the ALJ to 'describ[e] *how* the evidence supports *each*' of the ALJ's conclusions.") (quoting SSR 96-8P, 1996 WL 374184, at *7) (emphasis in original).  Here, the ALJ explicitly noted that Plaintiff's ADHD "affects his ability to function in this area," but offered no explanation of how the production-pace accommodation addresses his concentration, persistence, and pace limitation.  ECF No. 8-3 at 30.  Furthermore, limiting Plaintiff's work to a "specific production rate" "[does] not give us enough information to understand what those terms mean."  ECF No. 8-3 at 31; *Thomas*, 916 F.3d at 312.  This "makes it difficult, if not impossible," to assess whether the residual functional capacity is

supported by substantial evidence without "elaboration" on the meaning of the term. *Thomas*, 916 F.3d at 312.

The Commissioner asserts that the ALJ adequately provided an explanation of "specific production rate" by including the examples of "assembly-line work or work that requires hourly quotas." ECF No. 23 at 17. Yet, this Court has previously found similar language insufficient, as the Court is "left to guess" about how the ALJ determined that a "production-pace or assembly-line restriction" could accommodate Plaintiff's moderate concentration, persistence, and pace limitations. *E.g.*, *Catherine B.*, 2023 WL 8361643, at *4; *Marion J.* v. *Commissioner, Soc. Sec. Admin.*, Civil Action No. SAG-18-2407, 2019 WL 2290496, *2 (D. Md. May 29, 2019). Similarly, here, the ALJ's listed examples do not provide the "logical bridge" connecting the concentration, persistence, and pace limitation to the residual functional capacity determination. *Monroe*, 826 F.3d at 189. Thus, the ALJ's failure to either provide a narrative discussion that explains how the residual functional capacity finding addresses Plaintiff's moderate limitations in concentration, persistence, and pace or explain why no residual functional capacity accommodation is necessary to address these limitations requires remand.

Plaintiff further argues that the ALJ erred in failing to address how his moderate limitations in consistency, persistence, and pace impact his ability to stay on task during a normal workday. ECF No. 12 at 13. At the June 6, 2024 hearing, the ALJ posed a series of hypothetical questions to the vocational expert. The first three hypothetical questions correspond to the ALJ's conclusions regarding the Plaintiff's residual functional capacity. *Compare* ECF No. 8-3 at 31 *with* ECF No. 8-3 at 69–73. The ALJ then asked:

> Q: For the fourth hypothetical, please assume that we're dealing with a hypothetical claimant who has the same age, education, and work experience as this Claimant. And assume further that the hypothetical claimant has the Residual Functional Capacity to perform work that is no more than the medium exertional level. However, his ability to work at that level is substantially reduced in that he'd have to be off[ ]task more than 30% of the workday due to

> chronic and severe anxiety, depression, ADHD,[] bipolar disorder, and []
> schizoaffective disorder, and as a side effect from medications.  Could such a
> hypothetical Claimant perform his past work?

> A: No.

> Q: How about other work?

> A: Not that I would be able to deliver.  Based on my background, education, and
> training, anything more than 15% off-task will preclude full-time gainful
> employment.  And you have 30% off, so no jobs.

ECF No. 8-3 at 73–74.  In light of Plaintiff's moderate limitations in all other areas of the

"paragraph B" criteria and the vocational expert's testimony, the ALJ was required to explain

how the Plaintiff could remain productive for at least 85 percent of the workday.  *McLaughlin* v.

*Colvin*, 200 F. Supp. 3d 591, 602 (D. Md. 2016) (reversing and remanding where the ALJ failed

to explain how the claimant could remain productive for 85% of the workday where she had

moderate limitations in consistency, persistence, and pace and "it is reasonable to assume that

Plaintiff's moderate limitations translate into a decrease in productivity") (internal quotations

and alterations omitted); *see also Kelvin R.* v. *O'Malley*, Civil Action No. CDA-23-2532, 2024

WL 3937145, *3 (D. Md. Aug. 26, 2024) (finding the ALJ's decision lacks "an accurate and

logical bridge" from the evidence to the conclusion where the ALJ did not expressly address

Plaintiff's ability to remain on-task despite her consistency, persistence, and pace limitations).

The ALJ's failure to provide this explanation likewise necessitates remand.[11]

---

[11]  Plaintiff also argues that the ALJ erred by failing to define "specific production rate" in a hypothetical question she posed to the vocational expert and subsequently included in Plaintiff's residual functional capacity finding.  ECF No. 12 at 27.  The Social Security Regulations, the Dictionary of Occupational Titles, and the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles do not provide a definition for "production rate."  U.S. Dep't of Labor, Dictionary of Occupational Titles, App. C (4th ed. 1991), 1991 WL 688702; *see also Thomas* v. *Berryhill*, 916 F.3d 307, 312 (4th Cir. 2019), *as amended* (Feb. 22, 2019) (declining to infer the definition of "production rate" and "demand pace" where those terms "appear in a vanishingly small number of Social Security cases involving [residual functional capacity] evaluations" and are "certainly not common enough for us to know what they mean without elaboration").

2.      Physical Impairments

Plaintiff argues that the ALJ's conclusions are not supported by substantial evidence

because the ALJ failed to analyze how Plaintiff's severe impairments, including orthostatic

hypertension, hypotension, degenerative disc disease of the cervical spine, and degenerative disc

disease of the lumbar spine, affect his exertional capabilities.  ECF No. 12 at 15.  In response, the

Commissioner contends that the ALJ's analysis "includes sufficient discussion for this Court to

glean the ALJ's reasoning" regarding Plaintiff's limitations and is therefore supported by

substantial evidence.  ECF No. 23 at 9.

Here, the ALJ determined in the residual functional capacity assessment that Plaintiff

could perform medium work with several accommodations.[12]  ECF No. 8-3 at 31; *see also* I.C,

*supra* (outlining the ALJ's findings regarding Plaintiff's capacity for exertional work).  To reach

this finding, the ALJ assessed Plaintiff's symptoms, as well as medical opinions and findings.

---

For the same reasons outlined in Section II.B.1, *supra*, the undersigned concurs with Plaintiff that the hypothetical question with the indeterminate phrase "specific production rate" warrants remand.  *Perry* v. *Berryhill*, 765 Fed. Appx. 869, 872 (4th Cir. 2019) (finding the ALJ failed to offer a definition for his residual functional capacity determination of "non-production oriented work setting" and that "[a]s a result, we remain uncertain as to what the ALJ intended . . . and cannot meaningfully assess whether there is a logical bridge between the evidence in the record and the ALJ's conclusion" (internal quotations and citations omitted); *Adrian H.* v. *Commissioner, Soc. Sec. Admin.*, Civil Action No. SAG-20-3268, 2022 WL 112033, at *1 (D. Md. Jan. 12, 2022) (remanding where the residual functional capacity finding and related hypothetical failed to define "no fast pace or strict production requirements"); *Keith B.* v. *Saul*, Civil Action No. GLS-19-803, 2020 WL 3439261, *3 (D. Md. June 23, 2020) (remanding for clarification of both the residual functional capacity assessment and related hypothetical posed to the vocational expert where the phrase "production pace work" is not defined in the regulations).

[12]  "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work."  20 C.F.R. § 416.967(c); *see also* 20 C.F.R. § 416.967(b) (Light work is defined, in relevant part, as "a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls").

ECF No. 8-3 at 31–35 (citing 20 C.F.R. § 416.929 (How we evaluate symptoms, including pain[]); Social Security Ruling 16-3p, Titles II & XVI: Evaluation of Symptoms in Disability Claims (SSR 16-3p), 82 Fed. Reg. 49,462-03 (Oct. 25, 2017)).  The ALJ discussed Plaintiff's testimony and reports, medical records, and prior administrative medical findings.  ECF No. 8-3 at 31–35.  The ALJ did not, however, reference the residual functional capacity regulations or provide an assessment of the seven strength demands of exertional capacity in relation to each of Plaintiff's work functions.  *Id.*; *see also* n.10, *supra.*

This is precisely the error that formed the basis of the Fourth Circuit's reversal in *Dowling* v. *Commissioner of Social Security Administration*, 986 F.3d 377, 387 (4th Cir. 2021).  In *Dowling*, the Court found the ALJ relied on an incorrect regulatory framework when he assessed the claimant's residual functional capacity and failed to cite to and utilize 20 C.F.R. § 416.945.  *Id.*  Further, the ALJ in *Dowling* did not cite to SSR 96-8p, the 1996 Social Security Ruling that provides guidance on how to properly evaluate residual functional capacity, and did not indicate that his assessment "was rooted in a function-by-function analysis of how [claimant's] impairments impacted her ability to work."  *Id.*  Instead, the *Dowling* ALJ's residual functional capacity determination was "based entirely on SSRs 96-7p and 16-3p, which set out the process ALJs use to 'evaluate the intensity and persistence of [a claimant's] symptoms' and determine 'the extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the [ ] record.'"  *Id.* (quoting  SSR 16-3p, 2017 WL 5180304, at *2 (Oct. 25, 2017)).  While a claimant's symptoms are relevant to the residual functional capacity analysis, "[a residual functional capacity] assessment is a separate and distinct inquiry from a symptom evaluation, and the ALJ erred by treating them as one and the same."  *Id.*; *accord Marie Evelyn B.* v. *Kijakazi*, Civil Action No. GLS-22-1240, 2023 WL 4600520, at *5 (D. Md. July 17, 2023); *Nicole C.* v. *Kijakazi*, Civil Action No. JMC-22-2123,

16

2023 WL 4027481, at *4 (D. Md. June 15, 2023); *Theodore F.* v. *Kijakazi*, Civil Action No. ADC-22-1658, 2023 WL 2837585, at *7 (D. Md. Apr. 7, 2023). Because the ALJ did not employ the appropriate legal framework and engage in the required function-by-function analysis, the ALJ's decision is not supported by substantial evidence and requires remand.

### C.    Subjective Statements

When evaluating a claimant's subjective statements regarding his symptoms, an ALJ is required to use the two-step framework set forth in 20 C.F.R. § 416.920a and SSR 16-3p. *Arakas* v. *Commissioner, Soc. Sec. Admin.*, 983 F.3d 83, 95 (4th Cir. 2020). Under this framework, the ALJ must first "determine whether objective medical evidence presents a 'medically determinable impairment' that could reasonably be expected to produce the claimant's alleged symptoms." *Id.* (quoting 20 C.F.R. § 404.1529(b); SSR 16-3p, 82 Fed. Reg. at 49,463). Second, the ALJ must "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." SSR 16-3p, 82 Fed. Reg. at 49,464; *see also Arakas*, 983 F.3d at 95; 20 C.F.R. § 404.1529(c). Importantly, "[a]t this step, objective evidence is *not* required to find the claimant disabled." *Arakas*, 983 F.3d at 95 (emphasis in original). The Fourth Circuit extended its *Arakas* holding to chronic depression, finding it was "one of those other diseases" that does not produce objective medical evidence. *Shelley C.* v. *Commissioner of Soc. Sec. Admin.*, 61 F.4th 341, 360-361 (4th Cir. 2023); *see also Re: Lonnell J.* v. *Frank Bisignano, Comm'r, Soc. Sec. Admin.*, Civil Action No. DRM-24-3673, 2026 WL 693344 (D. Md. Mar. 12, 2026).

Consideration of the intensity, persistence, and limiting effects of the symptoms requires an ALJ to examine the entire case record, including the objective medical evidence; the claimant's subjective statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and

17

any other relevant evidence in the case record.  20 C.F.R. § 404.1529(c); SSR 16-3p, 82 Fed.

Reg. at 49,464-49,465.  The ALJ may also consider factors such as daily activities; the location,

duration, frequency, and intensity of pain or other symptoms; factors that precipitate and

aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication

taken to alleviate pain or other symptoms; and treatment, other than medication, received for

relief of pain or other symptoms.  20 C.F.R. § 404.1529(c); SSR 16-3p, 82 Fed. Reg. at 49,465-

49,466.  When assessing daily activities, an "ALJ may not consider the *type* of activities a

claimant can perform without also considering the *extent* to which [the claimant] can perform

them."  *Oakes* v. *Kijakazi*, 70 F.4th 207, 216 (4th Cir. 2023) (emphasis in original) (quoting

*Woods* v. *Berryhill*, 888 F.3d 686, 694) (4th Cir. 2018)).  As the Fourth Circuit has emphasized,

"[d]isability claimants should not be penalized for attempting to lead normal lives in the face of

their limitations."  *Lewis* v. *Berryhill*, 858 F.3d 858, 868 n.3 (4th Cir. 2017) (internal quotation

marks and citation omitted).  "Being able to live independently and participate in the everyday

activities of life empowers people with disabilities and promotes their equal dignity."  *Arakas*,

983 F.3d at 101.

A claimant is "entitled to rely exclusively on subjective evidence" to prove the severity

and extent of their symptoms.  *Arakas*, 983 F.3d at 96 (quoting *Hines* v. *Barnhart*, 453 F.3d 559,

563, 565 (4th Cir. 2006)).  Thus, an ALJ commits "reversible error by improperly increasing

Plaintiff's burden of proof by 'effectively requiring' [their] subjective symptoms to be

'supported by objective evidence.'" *Christina W.* v. *O'Malley*, Civil Action No. CDA-23-1325,

2024 WL 3819343, at *4 (D. Md. Aug. 14, 2024) (quoting *Arakas*, 983 F.3d at 96); *see also*

*Stoker* v. *Saul*, 833 Fed. Appx. 383, 386 (4th Cir. 2020) (per curiam) (finding that "the ALJ's

determination that [the claimant's] assertions about the severity and limiting effects of his pain

were less credible merely because no objective medical evidence supported them, was improper").

Here, Plaintiff argues that the ALJ contravened proper legal standards when she discounted Plaintiff's statements about his symptoms, "cherry-picked" evidence in the record relevant to those impairments, and heightened Plaintiff's burden of proof by requiring objective medical evidence of his mental impairments in addition to his subjective statements regarding his symptoms. ECF No. 12 at 21–26. The Commissioner does not address whether the ALJ properly employed the two-step framework set forth in 20 C.F.R. § 404.1529 and SSR 16-3p but generally contends that the ALJ "credited Plaintiff's subjective complaints to a large extent." ECF No. 23 at 14.

At the first step of the analysis, the ALJ determined that the Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. ECF No. 8-3 at 32. The ALJ erred, however, at the second step in the process by not providing a bridge between the evidence and her conclusion because she did not explain how the objective medical evidence "either undermine[d] or [was] entitled to more weight than Plaintiff's continued reports of pain." *Willis F.* v. *Kijakazi,* Civil Action No. AAQ-23-318, 2023 WL 8437229, at *3 (D. Md. Dec. 5, 2023); *accord Candace W.* v. *Dudek*, Civil Action No. ADC-24-2124, 2025 WL 885998, at *4 (D. Md. Mar. 21, 2025); *Kevin T.* v. *O'Malley*, Civil Action No. CDA-23-312, 2023 WL 8993664, at *4 (D. Md. Dec. 28, 2023); *Towanna G.* v. *Kijakazi*, Civil Action No. BAH-21-1711, 2022 WL 4017417, at *4 (D. Md. Sept. 2, 2022).

The evidence regarding Plaintiff's mental health is mixed. The ALJ noted that Plaintiff was admitted to the hospital in 2021 with altered mental status after he was found "unresponsive on the street;" examinations "have noted tense presentation, anxious and unhappy mood, pressured speech, restricted affect, irritability, and restlessness at times;" "mood swings and

19

occasional auditory hallucinations that are like whispers;" difficulty sleeping; social anxiety; as well as panic attacks and ongoing symptoms of depression.  ECF Nos. 8-3 at 33; 8-8 at 9, 23; 8-11 at 96, 121, 125, 126, 128, 131, 139, 145; 8-13 at 23, 41, 70, 74, 78.  Further, according to the ALJ's summary, Plaintiff testified that he has "experienc[ed] hallucinations for over 20 years," "stays away from people when he is manic and irritable," he "could stay up for up to [three] days during a manic episode" resulting in "visual and auditory hallucinations," tries to "keep to himself," has "crying spells daily," and "cannot control his emotions."  ECF No. 8-3 at 32, 57– 64.  The ALJ noted that in 2022 and 2023, Plaintiff's medication was working well, he was planning on going on a date, his social anxiety and other symptoms were improving due to medication efficacy, he was "planning to go back to work due to improvement in his anxiety level," and he had a job offer from a former employer.  *Id*. at 34.  The ALJ further described that Plaintiff had "been doing good with his social anxiety," had "improvement in his depression" and "his hallucinations were not a big deal" and he "was excited about moving in with his fiancé."  *Id*.  Yet, the record reflects, and the ALJ noted, that Plaintiff reported worsening symptoms of depression, anxiety, and schizophrenia, including manic episodes and hallucinations, to name a few.  *See, e.g.*, ECF Nos. 8-3 at 32, 57–64; 8-11 at 91–93. Furthermore, Plaintiff testified at the hearing that he didn't always tell his providers of his mental health symptoms because "it's embarrassing to tell somebody that you're crying for no reason at all and you can't control your emotions.  So sometimes I tell them, sometimes I don't."  ECF No. 8-3 at 64; *see also* ECF No. 8-13 at 23, 41 (discussing feelings of embarrassment).

As in *Willis F.* and other cited cases, the ALJ provided no explanation of why Plaintiff's repeated reports of worsening mental health symptoms were entitled to less weight than other reports when his mental health was evidently not as poor.  2023 WL 8437229, at *3.  In *David D.* v. *Bisignano*, this Court held that a Plaintiff's "ups and downs" in the consistency of their

20

symptoms "is not a proper basis to discredit" their subjective complaints.  Civil Action No. JMC-25-950, 2025 WL 3674652, at *8 (D. Md. Dec. 18, 2025).  This is precisely what the ALJ did here.  Notably, even where the ALJ suggests Plaintiff's symptoms have improved, *i.e.*, that his hallucinations are "not a big deal," the full quote from this medical opinion goes on to explain that Plaintiff "endorsed ongoing auditory and visual hallucinations.  Endorsed occasional[ly] seeing [] unknown people (not real) in the hallway and whispering to him but [he] added 'it's not a big deal.'"  ECF No. 8-11 at 138.  Remand is necessary where, as here, the ALJ improperly considered Plaintiff's subjective complaints in determining Plaintiff's residual functional capacity.

Finally, the ALJ erroneously concluded that Plaintiff's statements about his mental health symptoms were undermined by evidence regarding his daily activities.  ECF No. 8-3 at 32.  The ALJ concluded that Plaintiff's daily activities, including going on dates, looking for a job, planning on going back to work, and moving in with his fiancé "do not support the alleged loss of functioning."  *Id*. at 34.  Yet, an "ALJ may not consider the *type* of activities a claimant can perform without also considering the *extent* to which [the claimant] can perform them."  *Oakes*, 70 F.4th at 216 (emphasis in original) (internal quotations omitted).  The ALJ's observation that Plaintiff participates in dating and job seeking without analyzing the extent of that participation has little bearing on Plaintiff's "ability to do sustained work-related activities on a regular and continuing basis—*i.e.*, 8 hours a day, for 5 days a week, or an equivalent work schedule."  *Arakas*, 983 F.3d at 100; *see also Willis F*., 2023 WL 8437229, at *4 (collecting cases).  For all of these reasons, the ALJ employed an improper legal standard in evaluating the Plaintiff's subjective statements, which requires remand.

## III.    CONCLUSION

For the foregoing reasons, the Commissioner's decision is reversed, and the case is remanded for further proceedings consistent with this Memorandum Opinion pursuant to sentence four of 42 U.S.C. § 405(g).  In remanding for further explanation and analysis, the Court offers no opinion as to whether the ALJ's ultimate conclusion that Plaintiff is not entitled to benefits is correct.  A separate Order follows.


Date:  March 16, 2026                                    _____/s/_____
                                                         Erin Aslan
                                                         United States Magistrate Judge